**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:24-cr-00141-SEP/JSD |
| | ) | |
| ERIK ELSASSER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Erik Elsasser's pro se motion to revoke or amend United States Magistrate Judge John M. Bodenhausen's order of detention pursuant to 18 U.S.C. § 3145(b). *See* Doc. [128]. Defendant also asserts that his continued detention violates the Due Process Clause of the United States Constitution. *Id.* The Government has filed a response in opposition. Doc. [141]. For the reasons set forth below, Elsasser's motion is denied.

### BACKGROUND AND DISCUSSION

A district court reviews a magistrate judge's order of detention de novo. *See United States v. Maull,* 773 F.2d 1479, 1481 (8th Cir. 1985). When reviewing the magistrate judge's detention order, the district court "must make the same inquiry regarding a defendant's risk of flight and danger to the community as did the magistrate." *Id.* at 1484.

### I. 18 U.S.C. § 3142(g) Analysis

A defendant may be detained pending trial "if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions will reasonably assure the defendant's appearance." *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (citation modified). To determine whether such release conditions exist, courts consider: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger to the person or community. *Id.*; *see also* 18 U.S.C. § 3142(g). Because Defendant is charged with Distribution of Child Pornography, there is a presumption that no condition or set

of conditions will reasonably assure Defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E).

After a thorough and independent review of the record, including the Indictment, the Bail Report, the briefs submitted in connection with the original motion to detain Defendant, as well as the documents submitted in support of Elsasser's motion to revoke or amend his detention order, the Court agrees with Judge Bodenhausen's conclusion that no condition or combination of conditions will reasonably assure the safety of the community if Elsasser is released.

Defendant presents no new information that alters that assessment. Elsasser argues that now, unlike in 2024, his only form of identification has expired, making travel difficult, and he is indigent, having sold most of his belongings to support his family. *See* Doc. [128] at 9. But neither the undersigned nor Judge Bodenhausen has found detention appropriate due to Elsasser's financial situation or ability to travel. Rather, the undersigned, like Judge Bodenhausen, deems detention necessary because the weight of evidence against Elsasser is strong; he is subject to a lengthy sentence if convicted; and he has a history of substance abuse, failure to appear in court when ordered, and probation violations. Elsasser's new arguments do not touch those considerations.

## II. <u>Due Process Analysis</u>

"An individual may be detained prior to trial without violating . . . [the Fifth Amendment] so long as that confinement does not amount to 'punishment of the detainee.' " *United States v. Rush*, 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)), *report and recommendation adopted*, 2017 WL 6550680 (E.D. Mo. Dec. 21, 2017). The United States Supreme Court has concluded that, generally, "the pretrial detention contemplated by the Bail Reform Act is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *United States v. Salerno*, 481 U.S. 739, 746-748 (1987); *see also United States v. Maull*, 773 F.2d 1749, 1485 (8th Cir. 1985) ("[W]hile pretrial detention involves incarceration . . . it is not punishment if it serves a legitimate regulatory purpose which outweighs its punitive aspects and is not excessive in relationship to that purpose.").

Elsasser argues that his pretrial detention of approximately 29 months is so lengthy that it has become unconstitutionally punitive. Courts have held that prolonged pretrial detention "may

become excessive and consequently punitive so as to offend due process constraints." *United States v. Archambault*, 240 F. Supp. 2d 1082, 1085 (D.S.D. 2002) (citing cases).

There is no bright-line rule[1] that dictates when pretrial detention crosses the line from reasonable to punitive in nature. The Supreme Court has taken "no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress's regulatory goal." *Salerno*, 481 U.S. at 747 n.4. Rather, "the due-process limit on the duration of preventative detention requires assessment on a case-by-case basis, for the clause establishes no specific limit on the length of pretrial confinement." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989). In conducting such case-by-case analysis, Courts look to multiple factors, including: (1) the length of detention; (2) which party is primarily at fault for any delay in trial, and (3) the factors relevant to the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or danger to the community, and the strength of the government's case on the merits. *See Archambault*, 240 F. Supp. 2d at 1086.

Elsasser focuses primarily on the length of his detention when arguing that his due process rights have been violated. *See generally* Doc. [128]. While the length of pretrial detention is one relevant factor, "length of detention alone is not dispositive and carries no fixed weight in the review process." *Archambault*, 240 F. Supp. 2d at 1085. Indeed, "length of detention 'will rarely by itself offend due process.'" *United States v. Buswell*, 2013 WL 210899, *8 (W.D. La. Jan. 18, 2013) (quoting *United States v. Orena*, 986 F.2d 628, 631(2d Cir.1993). And Elsasser cites no authority holding that a 29-month pretrial detention, standing alone, violates the due process clause.

As to the second factor, there is no question that Elsasser himself is primarily at fault for the delay in his trial date. The history of this case is thoroughly documented in prior orders, *see, e.g.*, Docs. [105], [111], and will not be fully recited here. In sum, after the initial pretrial motion process was completed and the case set for trial, Defendant replaced his counsel on the eve of a change of plea hearing and then sought and was granted—without opposition from the

[1] According to Elsasser, *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), stands for the proposition that pretrial detention of more than six months "likely" violates due process. Doc. [128] at 3. In fact, *Kennedy* does not discuss pretrial detention; nor does it address lengthy detention in other contexts. It concerns the constitutionality of statutes that stripped Americans of their citizenship for leaving the United States during a time of war in order to evade military service.

Government—many continuances in the interest of allowing new counsel time to get up to speed and advise Defendant on his options. *See* Docs. [70], [76], [77], [80], [83]. Then, only two weeks before the March 9, 2026, trial setting (the sixth setting in this matter) Defendant submitted a series of pro se filings, provoking a *Frye* hearing, at which defense counsel sought yet another continuance to review and decide how to proceed with the pro se motions. *See* Doc. [92]. The Court expressed concern that reopening pretrial motions would prolong this already lengthy case but granted the continuance after receiving both oral and written assurances that Defendant believed the additional time for his counsel to review his motions and provide advice was in his best interest. *See* Docs. [95], [97]. When, after a full month, Defendant's counsel elected to submit Defendant's pro se motions over his own signature without alteration, the Court referred the case to Magistrate Judge Dueker for consideration of the motions, all of which Judge Dueker eventually recommended denying as both untimely and lacking in merit. *See* Doc. [105]. On July 31, 2026, the Court adopted Judge Dueker's recommendation to deny the motions as untimely and set the case for trial on August 24, 2026. *See* Doc. [111]. On August 19, 2026, a Superseding Indictment, Doc. [113], was returned against Defendant—one of the only timeline-altering events that was in no way attributable to Elsasser—after which he was arraigned and pleaded not guilty, Doc. [119]. Some weeks later, on September 11, 2026, Defendant discharged his retained counsel and sought permission to proceed pro se, Docs. [123], [125], [133], after which he filed another litany of pro se motions, including this one. In short, although substantial time has elapsed since Elsasser was first detained, almost all of that time has been granted by the Court at his request to accommodate his own strategic decisions.

Finally, the Court has already considered de novo the factors relevant to the initial detention decision and found that they support detention. Thus, none of the *Archambault* factors militate in favor of release, and Defendant's bid for release on due process grounds is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Revoke or Amend Order of Detention, Doc. [128], is **DENIED**.

Dated this 16th day of October, 2026.

Sarah E. Pitlyk

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE